*10*

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

**SEP 1 7 2002**

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| MONICA LOZANO | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CASE NO. B-02-117 |
| | § | |
| CONSECO FINANCE SERVICING CORP. | § | |
| Defendant | § | Jury Demanded |

## PLAINTIFF'S RESPONSE TO CONSECO FINANCE SERVICING CORP.'S MOTION TO ABATE AND TO COMPEL ARBITRATION

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW MONICA LOZANO, Plaintiff in the above-entitled and numbered cause, by its undersigned attorneys, and files this her Response to Conseco Finance Servicing Corp.'s Motion to Abate and to Compel Arbitration, and in support thereof would show the Court as follows:

### A. INTRODUCTION

1.    Plaintiff is Monica Lozano.  Defendant is Conseco Finance Servicing Corp. ("Conseco").

2.    On May 31, 2002, Plaintiff filed a Complaint against Conseco for forgery of Plaintiff's signature on a home equity loan, violations of Article 16, Section 50 of the Texas Constitution, and violations of the Texas Deceptive Trade Practices Act.  Plaintiffs seek actual damages, forfeiture, declaratory relief and punitive damages.

3.    Defendant filed an Original Answer and Motion to Abate and to Compel Arbitration on August 29, 2002.

4.    This case is currently set for an Initial Pretrial Conference and for hearing on Defendant's Motion to Abate and to Compel Arbitration on November 19, 2002.

5.    Plaintiffs file this response asking the court to deny Defendant's Motion to Abate and to

Compel Arbitration.

## B. THERE IS NO ARBITRATION AGREEMENT IF THERE IS A FORGERY

6.  A court may not compel a party to arbitrate without the party having agreed to do so. *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582; 80 S.Ct. 1347 (1960); *see U.S.C. Section 2*; *Tex. Civ. Prac. & Rem. Code Section 171.001*. In deciding whether parties must submit to arbitration, courts conduct a two-step inquiry. *Ope International LP v. Chet Morrison Contractors, Incorporated*, 258 F.3d 443, 445 (5th Cir. 2001). The first step is to decide whether the parties agreed to arbitrate their dispute. If the court finds that the parties agreed to arbitrate, the second step is to consider whether any federal statute or policy foreclosed the arbitration of those claims. *Id.* at 445-446.

7.  In determining whether the parties agreed to arbitrate their dispute, a court considers the following: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement. *Id.* at 445-446. In resolving these issues, courts apply ordinary state-law principles that govern contract formation including the validity, revocability, and enforceability of contracts. *Id.* at 446; *First Option of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924 (1995).

8.  In the case at hand, this Honorable Court need make only the first of these two determinations, that is whether a valid agreement to arbitrate exists. *Terrance Prevost v. Burns International Security Services Corporation*, 126 F. Supp. 2d 439, 441 (S.D. Tex. 2000). In the *Terrance Prevost* case, that Court addressed the exact issue that is currently

before this Honorable Court. That case involved a Plaintiff that brought a discrimination case against his employer. The employer attempted to compel the lawsuit to arbitration based on an arbitration agreement that the Plaintiff allegedly signed prior to his employment. The Plaintiff argued that there was no valid agreement as his signature had been forged on the arbitration agreement. *Id.* at 441-442.

9.    The *Prevost* court stated that there must be a valid agreement to arbitrate. *Id.* at 441 (*citing Jolley v. Welch*, 904 F.2d 988, 994 (5ᵗʰ Cir. 1990)). "[I]f Plaintiff did not sign the Arbitration Agreement, it obviously cannot be valid." *Id.* (citing *Jolley* at 993-994 (affirming a district court's decision not to refer a matter to arbitration when the defendant produced no evidence that the plaintiff had signed an agreement to arbitrate); *Monk v. Perdue Farms, Inc.* 12 F. Supp. 2d 508, 508-509 (D. Md. 1998) (holding that a court, not the arbitrator, must resolve whether a signature on an arbitration agreement is a forgery); *Donato v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 663 F. Supp. 669, 676-77 (N.D. Ill. 1987) (declining to stay case for arbitration until the court had resolved a forged signature issue)). As such, United States District Judge Samuel B. Kent of the Galveston Division, Southern District of Texas found proper a brief trial on the merits, limited to the singular issue of whether the signature appearing on the arbitration agreement was that of the Plaintiff. *Id.* at 442 (*citing 9 U.S.C. Secn. 4* (calling for a trial on the merits when the making of the arbitration agreement ... be in issue)). Quoting Judge Kent regarding a forgery of an arbitration agreement, the "Plaintiff is entitled to [her] day in court on the issue of signature authenticity." *Id.* at 443.

10.    In the case at hand, the first step of the inquiry is simply not met. There was no agreement between the Plaintiff and Defendant to arbitrate. Plaintiff did not agree to arbitration and the

Plaintiff's signature on the arbitration agreement was forged. *See Exhibit "1"*. As such, arbitration cannot be compelled. The arbitration clause is not valid and should not be enforced.

## C. THERE IS NO ARBITRATION AGREEMENT BECAUSE THE AGREEMENT WAS PROCURED BY FRAUD

11.     An arbitration agreement procured by fraud is not enforceable. *In Re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999); *R.M. Perez & Associates, Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992); *The Babcock & Wilcox Company v. PMAC, LTD*, 863 S.W. 2d 225, 231 n.3 (Tex. App.–Houston [14th Cir.] 1993, writ denied); *C.B.S. Emp. Fed. Cr. Union v. Donaldson, et al.*, 912 F.2d 1563 (6th Cir. 1990); *Bhatia v. Johnson*, 818 F.2d 418 (5th Cir. 1987). In the case at hand, Plaintiff's signature was forged on the arbitration agreement. *See Exhibit "1"*. The Texas Supreme Court has defined forgery as "the making without authority of a false instrument in writing, purporting to be the act of another, in such a manner that the false instrument so made would, if true, have created ... any pecuniary obligation. The instrument must appear on its face to be, or must in fact be, one which, if true, would possess some legal validity, or be legally capable of effecting a fraud." *Donald F. Nobles, et al. V. Charles Marcus, et al.*, 533 S.W.2d 923, 926 (Tex. 1976). The fraud that has been committed is by inducing the belief that the instrument was executed by someone other than by the person who signed the instrument. Such an instrument is voidable under Texas law. *Id.* The forgery that was committed on the arbitration agreement at hand is one that deems the fraudulent agreement unenforceable. *See R.M. Perez*; *The Babcock & Wilcox Company*; *C.B.S. Emp. Fed. Cr. Union*; *Bhatia*. If the fraud relates to the making of the arbitration

clause itself, the court should adjudicate the fraud claim and not refer it to arbitration. *Id.*

12. In *R.M. Perez*, the Fifth Circuit Court of Appeals examined how fraud on an arbitration clause versus fraud on the entire contract (but not the arbitration clause) determines arbitrability. *Perez*. In that case, the Court looked at whether the plaintiff's claim of fraud related to the making of the arbitration agreement itself or to the contract as a whole. *R.M. Perez* involved a group of plaintiffs that each signed documents containing an arbitration clause. Evidence regarding the specific factual circumstances of the signing of the various agreements was presented to the court. All plaintiffs agreed they had signed the arbitration agreements. The only fraud complained of was in the formation of the entire contract, not in the making of the arbitration agreements. *Id.* at 538-539. <u>No fraud was alleged in the making of the arbitration agreements</u>. Therefore, the court found such fraud was arbitrable. *Id.* at 539. The Court stated that if the fraud relates to the arbitration clause itself, the court should adjudicate the fraud claim. If it relates to the entire agreement, then the fraud claim should be decided by an arbitrator. *Id.* at 538.

13. In another Fifth Circuit Court opinion, the Court also addressed the relevance of fraud in an arbitration agreement versus the entire contract. *Bhatia* at 421-422. In that case the court stated that it must first determine whether the parties agreed to arbitrate the dispute. *Id.* at 421. The Court noted that in resolving the question of arbitrability, the Court "should remain keenly attuned to well-grounded claims that 'the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds' for the revocation of any contract." *Id.* "If the claim is fraud in the inducement of the arbitration clause itself–an issue which goes to the 'making' of the agreement to arbitrate–the federal court may

proceed to adjudicate it. But the statutory language [of the Arbitration Act] does not permit the ... court to consider claims of fraud in the inducement of the contract generally." *Id.* In that case, the Plaintiff charged that the Defendant's misrepresentations tainted his actions with respect to the entire contract and **did not contend** that the arbitration clause was induced by fraud. The Plaintiff simply did not read the agreements and was unaware of the arbitration clause. *Id.* As such, the Court found that arbitration was proper. *Id.* at 422.

14.     Unlike the *R.M. Perez* case and *Bhatia* case, the case at hand does involve fraud in the arbitration clause. *See Exhibit "1".* From the Affidavit of Monica Lozano, it is clear that the Plaintiff did not sign or agree to arbitration. The Plaintiff's signature was forged on the document that contained the arbitration clause. This fraud was both a fraud on the arbitration clause and on the entire contract. In short, Monica Lozano did not enter into an arbitration agreement. It is clear that such a fraud on the arbitration clause is one that is proper for this Honorable Court's determination. *See R.M. Perez; Bhatia.*

## D. THERE IS NO ARBITRATION AGREEMENT UNDER TEXAS CONTRACT LAW

15.     Under Texas law, the relevant elements of contract formation that determine whether there is a valid agreement to arbitrate require that there be (1) an offer, (2) an acceptance, (3) mutual assent, (4) execution and delivery of the contract with the intent that it be mutual and binding, and (5) mutuality of obligations supporting the contract. *Texas Gas Util. Co. v. Barrett*, 460 S.W. 2d 409, 412 (Tex. 1970).

16.     In the case at hand, the Plaintiff did not accept the arbitration agreement nor was there a mutual assent. *See Exhibit "1", Affidavit of Monica Lozano.* Plaintiff did not agree to the arbitration agreement and never acknowledged acceptance of the arbitration clause. *Id.* As

is evident from the Affidavit of Monica Lozano, Plaintiff's signature and initials were forged on the contract which included the arbitration clause. Plaintiff did not accept the terms of the home equity contract nor the terms of the arbitration clause. *Id.* As such, it is clear that there was no acceptance of the arbitration agreement and no valid agreement to arbitrate exists. Without a valid agreement to arbitrate, this Honorable Court may not compel the Plaintiff to arbitrate.

## E.  PUBLIC POLICY FAVORS ARBITRATION ONLY WHEN THERE IS AN ARBITRATION AGREEMENT

17.      Defendant is correct in stating that Texas public policy favors arbitration and refers the Court to Section 171.001 of the Texas Civil Practice and Remedies Code provides:

(a)      A written agreement to arbitrate is valid and enforceable if the agreement is to arbitrate a controversy that:
(1)      exists at the time of the agreement; or
(2)      arises between the parties after the date of the agreement.

(b)      A party may revoke the agreement only on a ground that exists at law or in equity for the revocation of a contract.

*See Conseco Finance Servicing Corp.'s Motion to Abate and to Compel Arbitration, page 3, paragraph 5.* Defendant further states to this Honorable Court that "[b]oth Federal and Texas courts agree that the validity of the entire note shall be arbitrated if a valid arbitration clause is present." *Id., page 5, paragraph 11.* Defendant, though, ignores the two-step inquiry that this Honorable Court must use in deciding whether parties must submit to arbitration. The Texas Arbitration Act, the Federal Arbitration Act, Texas law, and Federal law are consistent--there must be an agreement before there is a finding that arbitration is enforceable. A court may not compel a party to arbitrate without the party having agreed to

do so. *Freis v. Canales*, 877 S.W.2d 283 (Tex. 1994); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582; 80 S.Ct. 1347( 1960).

18.    In the case at hand, there was no agreement between the Plaintiff and Defendant to arbitrate. *See Exhibit "1"*. As such, the arbitration clause is not valid and should not be enforced.

## F. PRAYER

For these reasons, Plaintiff asks the court to deny Defendant's motion to abate and to compel arbitration in its entirety. Plaintiffs ask this Honorable Court to retain the case on the court's docket and to allow this case to proceed in this Court. In the alternative, Plaintiff asks for a brief bench trial on the merits, limited to the singular issue of whether the signature appearing on the arbitration agreement was that of the Plaintiff.

Respectfully Submitted,
LAW OFFICES OF JOHN VENTURA, P.C.


John Ventura
Federal Id No. 1646
Texas Bar No. 20545700
Conrad Bodden
Federal Id No. 21003
Texas Bar No. 00796220
62 E. Price Road
Brownsville, Texas 78521
(956) 546-9398 phone
(956) 542-1478 facsimile

Karen L. Kellett
State Bar No. 11199520
The Kellett Law Firm, A Professional Corporation
Founders Square
900 Jackson Street, Suite 120
Dallas, TX 75202
(214) 292-3660 telephone
(214) 744-3661 facsimile
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiff's Response to Defendant's Motion to Abate and Compel Arbitration was served upon opposing counsel:

Rod Hardie                                      VIA CMRRR and
Hughes, Watters & Askanase, L.L.P.              VIA Facsimile (713) 759-6834
1415 Louisiana, 37th Floor
Houston, Texas 77002-7354

by certified mail, return receipt requested and/or facsimile transmission pursuant to the Federal Rules of Civil Procedure on this the ____\7____ day of September 2002.

John Ventura

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MONICA BERAIN de LOZANO | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | CASE NO. B-02-117 |
| | § | |
| CONSECO FINANCE SERVICING CORP. | § | |
|     Defendant | § | Jury Demanded |

### AFFIDAVIT OF MONICA LOZANO

**BEFORE ME**, the undersigned authority, on this day personally appeared Monica Berain de Lozano, who swore on oath that the following facts are true:

"My name is Monica Berain de Lozano. I am over 18 years of age, of sound mind, and fully competent to make this affidavit. I am the Plaintiff in the above-referenced lawsuit, personally acquainted with the facts stated herein and they are all true and correct."

"Attached is a copy of the Texas Home Equity Real Estate Note that is the subject of this lawsuit. My maiden name is Monica Berain de Lozano. The signature that appears on the Texas Home Equity Real Estate Note as Monica Berain de Lozano and the corresponding initials, M.B., are not mine. I did not at anytime sign the Texas Home Equity Real Estate Note nor initial any corresponding page."

"I have never agreed to arbitration of any sort related to the Texas Home Equity Real Estate Note that is the subject of this lawsuit. I have never discussed arbitration with Conseco Finance Servicing Corp. I never agreed to the terms of the Texas Home Equity Real Estate Note."

SIGNED on _Sept 16_, 2002.



Monica Berain de Lozano, Affiant

**SUBSCRIBED AND SWORN TO BEFORE ME** on _9-16-02_, by _____.



Notary Public, State of Texas

YVETTE GONZALEZ
MY COMMISSION EXPIRES
March 28, 2006

GT-15-44-001a (12/99)

Application # 000721204

| | | |
|---|---|---|
| Conseco Finance Servicing Corp.<br>70 NE Loop 410<br>Suite 295<br>San Antonio, Texas 78216 | Gerardo Lozano<br>3300 S. Casalinda<br>Mcallen, TX 78501 | Loan Number _____ 6908327197<br>Date _____ August 23, 2000<br>Maturity Date September 6, 2020<br>Loan Amount $ _____ 80,250.00 |

**LENDER'S NAME AND ADDRESS**
"You" means the Lender, its successors and assigns.

**TERMS FOLLOWING A ___ APPLY ONLY IF CHECKED**

**BORROWER'S NAME AND ADDRESS**
"I" includes each Borrower above, jointly and severally.

**X THIS NOTE CONCERNS AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.**

# TEXAS HOME EQUITY REAL ESTATE NOTE
### (Cash Out - First Lien)

For value received, I promise to pay to you at your address listed above the PRINCIPAL sum of __Eighty Thousand Two Hundred Fifty and No/100__ Dollars $ __80,250.00__ .

I will receive all of this principal sum on ____ 08/27/2000 ____ . No additional advances are contemplated under this note.

INTEREST: I agree to pay interest on the outstanding principal balance from __August 27, 2000__ at the rate of __16.750__

_____ % per year until __September 6, 2020__

**N/A Variable Rate:** This rate may then change as stated below.

.Change Dates: Each date on which the interest rate may change is called a "Change Date." The interest rate may change _____ _____ and on every _____ thereafter.

The Index: Beginning with the first Change Date, the interest rate will be based on the following Index: _____

The most recent Index value available as of the date ___ 45 days ___ _____ before each Change Date is called the "Current Index."

Calculation of Change: Before each Change Date, the Lender will calculate the interest rate, which will be _____ _____ the Current Index. The result of this calculation will be rounded _____ . The new interest rate will become effective on each Change Date. Subject to any limitations below, this will be the new interest rate until the next Change Date, or, if there is no next Change Date, at maturity (whether by expiration of time, acceleration or otherwise).

Limitations: The per annum interest rate will never be greater than _____% or less than _____%. ___ The per annum interest rate will never change on any single Change Date by more than _____ %.

Effect of Variable Rate: A change in the interest rate will have the following effect on the payments:
___ The amount of each scheduled payment will change.

_____

Statutory Ceiling - The interest rate in effect on this note shall not at any time be greater than the maximum interest rate allowed by law for loans of this type.
___ This maximum interest rate will be the quarterly ceiling rate announced by the Consumer Credit Commissioner from time to time thereafter.

ACCRUAL METHOD: Interest will be calculated on a _____ 30/360 day _____ basis.

**X LATE CHARGE:** If a payment is more than _____ 10 _____ days late, I will be charged _____ 5.000% of the payment or $10.00 whichever is greater.

**X NSF FEE:** If any instrument which I submit to you is returned unpaid for any reason, I will pay you a fee of _____ $25.00

**X ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which X are ___ are not included in the principal amount above: _____ See Addendum A _____

POST-MATURITY INTEREST - Interest will accrue at the rate of ___ 16.750 % per year on the principal balance of this note not paid on the date of the last scheduled payment of principal. Interest will accrue at a rate of _____ 16.750 % per year on the balance of this note from the date we accelerate the maturity of this note and demand immediate payment in full.

PAYMENTS: I agree to pay this note as follows:

240 payments of $1,161.88 starting on October 6, 2000
and on the 6th day of each month thereafter.

REAL ESTATE NOTE
© 1997 Bankers Systems, Inc., St. Cloud, MN  Form GT-REN1LZ-TX  12/29/99

Form #100067

GT-15-44-011a (12/99) (page 1 of 4)

Exhibit "A"

SECURITY: This note is secured by a separate Home Equity Deed of Trust dated _____ August _____ _____ 2000
Additional identification (optional)

## ADDITIONAL TERMS OF THE NOTE

**GENERALLY** - The headings at the beginning of each section are for convenience only and are not to be used in interpreting the text of the section.

I agree to cooperate with you regarding any requests after closing to correct errors made concerning this contract or the transaction and to provide any and all additional documentation deemed necessary by you to complete this transaction. I agree that you may enforce this agreement by judicial process and are entitled to attorneys' fees, costs and disbursements incident to such enforcement.

**DEFINITIONS** - "I," "me" or "my" means each Borrower who signs this note. "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW; SEVERABILITY** - The interest charged, contracted for, and received on this loan, including fees and charges constituting interest under federal statutory or regulatory law, is governed by the laws of the State of ____ Texas ____. All other terms of this loan are governed by the laws of the State of _____ Texas _____.

Any provision in this note, any agreement securing this note, attachments, or any agreement related to this note that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any provision of this note cannot be enforced according to its terms, that provision will be severed and will not affect the enforceability of the remainder of this note.

**PAYMENTS** - Unless otherwise required by law, each payment I make on this loan will be applied first to any charges I owe other than principal and interest, then to interest that is due, and finally to principal that is due. The actual amount of my final payment will depend on the interest rates in effect from time to time (if variable) and my payment record.

**PREPAYMENT** - I will not pay a penalty upon prepayment unless otherwise stated in the next sentence. If I prepay in full within ____ N/A ____ months of the date of this note, I will pay you a penalty of _____ N/A _____.
_____ .
**Partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full.**

**INTEREST AND OTHER CHARGES** - In no event shall any provision of this note or any other instrument evidencing or securing this note ever obligate me to pay, or allow you to collect, interest on this loan at a rate greater than the maximum non-usurious rate permitted by applicable law. In the event that any law is interpreted so that any charge provided for in this note and/or any other instrument evidencing or securing this note, violates such law by reason of the acceleration of the note or otherwise, such charge is hereby reduced to eliminate such violation. Any amounts paid to you in excess of the amounts permitted by applicable law shall be applied to reduce the principal of the note, or at your option, shall be refunded.

**INDEX** - If you and I have agreed that the interest rate on this note will be variable and will be related to an Index, then the Index you select will function only as a tool for setting the per annum interest rate on this note. You do not guarantee, by selecting any Index, that the interest rate

on this note will have a particular relationship to the interest rate you charge on any other loans or any type or class of loans with your other customers.

**ACCRUAL METHOD** - The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1. For interest calculation, the accrual method will determine the number of days in a year. If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**SINGLE ADVANCE LOANS** - This is a single advance loan. You and I expect that you will only make one advance of principal. However, you may add other amounts to the principal if you make any payments described in the PAYMENTS BY LENDER section below.

**PAYMENTS BY LENDER** - You are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums). You may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**NO ADDITIONAL COLLATERAL** - The phrase "Homestead Property" as used here means the property described in the Home Equity Deed of Trust referenced on Page 1. This loan is secured solely by my Homestead Property. Neither you nor any other party has required any collateral other than my Homestead Property to secure this loan.

Any provision contained in any other document between the parties or with any third party, including but not limited to a deposit agreement, security agreement, pledge, security instrument, mortgage, deed of trust, or other loan agreement, which gives you a security interest in any personal or real property other than my Homestead Property shall not apply to this loan.

Any right of set-off, whether occurring by operation of law or by other contract between the parties, is specifically waived and disclaimed by you as to this loan and shall not apply.

**DEFAULT** - I will be in default on this loan and any agreement securing this loan if:
(a) I fail to make a payment as required by this loan; or
(b) I fail to pay taxes properly levied against the homestead property securing this note when due; or
(c) I fail to perform any of the material obligations included in any agreement securing this note.
If any of us are in default on this note or any agreement securing this loan, you may exercise your remedies against any or all of us.

**REMEDIES** - If I am in default on this loan and after giving notice if required by law, you may:
(a) Make unpaid principal, earned interest and all other agreed charges I owe you under this loan immediately due;
(b) Make a claim for any and all insurance benefits or refunds that may be available on my default;
(c) Use any remedy you have under state or federal law; and
(d) Use any remedy given to you in any agreement securing this loan.
By choosing any one or more of these remedies you do not give up your right to use another remedy later. By deciding not to use any remedy should I be in default, you do not give up your right to consider the event a default if it continues or happens again.

© 1997 Bankers Systems, Inc., St. Cloud, MN   Form GT-REN1LZ-TX 12/29/99

GT-15-44-011a (12/99) (page 2 of 4)

**ADDITIONAL TERMS OF THE NOTE (CONT.)**

**NOTICE OF FAILURE TO COMPLY; RIGHT TO COMPLY; FORFEITURE** - I agree to provide written notice to you of your failure to comply with your obligations under this loan. I agree to provide this written notice in a manner that provides proof of delivery to you by a third party, such as by certified or registered US Mail, licensed courier, or express mail service.

After providing the written notice described in the preceding paragraph, I agree to provide you reasonable time to comply with your obligations under this loan. I further agree that you may, for the sole purpose of complying with your obligations under Section 50, Article XVI of the Texas Constitution, amend or modify this note or any other document related to this loan by providing a written correction notice to me. I agree that your right to comply as provided in this provision shall survive payoff of the loan.

You will forfeit all principal and interest of this loan if you fail to comply with your obligations under the loan within a reasonable time after I have provided written notice to you of your failure to comply.

You and I agree that for the purposes of this provision and any other provision of the loan related to possible forfeiture of principal and interest by you, the phrase "reasonable time" as it relates to your right to comply with your obligations under this loan means 60 consecutive calendar days.

**COSTS OF COLLECTION AND ATTORNEYS' FEES** - I agree to pay you all reasonable costs you incur to collect this debt or realize on any security. Unless prohibited by law, this includes the reasonable attorneys' fees you incur after my default, provided the attorney is not your salaried employee. This provision also shall apply if I file a petition or any other claim for relief under any bankruptcy rule or law of the United States, or if such petition or other claim for relief is filed against me by another.

**ARBITRATION** - All disputes, claims, or controversies arising from or relating to this note or the relationships which result from this note, or the validity of this arbitration clause or the entire note, shall be resolved by binding arbitration by one arbitrator selected by you with my consent. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, Title 9 of the United States Code. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL, EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY YOU (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under case law, statutory law, and all other laws including, but

not limited to, all contract, tort, and property disputes, will be subject to binding arbitration in accord with this arbitration agreement. I agree that I shall not have the right to participate as a representative or a member of any class of claimants pertaining to any claim arising from or relating to this note. The parties agree and understand that the arbitrator shall have all powers provided by law and the note. These powers shall include all legal and equitable remedies, including, but not limited to, money damages, declaratory relief, and injunctive relief. Notwithstanding anything hereunto the contrary, you retain an option to use judicial or non-judicial relief to enforce a security agreement relating to the collateral secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation or to foreclose on the collateral. Such judicial relief would take the form of a lawsuit. The institution and maintenance of an action for judicial relief in a court to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement, shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this note, including the filing of a counterclaim in a suit brought by you pursuant to this provision.

**OBLIGATIONS INDEPENDENT** - Subject to the "PERSONAL LIABILITY" provision below. I understand that my obligation to pay this loan is independent of the obligation of any other person who has also agreed to pay it. You may, without notice, release me or any of us, give up any right you may have against any of us, extend new credit to any of us, or renew or change this note one or more times and for any term, and I will still be obligated to pay this loan.

**PERSONAL LIABILITY** - This note and the security instrument are without recourse for personal liability against me and my spouse, unless I or my spouse obtained the loan by actual fraud. Absent actual fraud, you can enforce your rights under the security instrument solely against the homestead property and not personally against me or my spouse. If the loan is obtained by actual fraud, I, having signed the note, will be personally liable for the payment of any amounts due under the note or the security instrument and a personal judgment may be obtained against me, including a judgment for any deficiency that results from your sale of the homestead property for an amount less than is owing under the note.

**WAIVER** - I waive (to the extent permitted by law) demand, presentment, protest, notice of dishonor, notice of protest, notice of intent to accelerate and notice of acceleration.

**PRIVACY** - I agree that from time to time you may receive credit information about me from others, including other lenders and credit reporting agencies. I agree that you may furnish on a regular basis credit and experience information regarding my loan to others seeking such information. To the extent permitted by law, I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

© 1997 Bankers Systems, Inc., St. Cloud, MN  Form GT-REN1LZ-TX  12/29/99

. PURPOSE: The purpose of this loan is __Refinance__

ADDITIONAL TERMS:

This contract is subject in whole or in part to Texas law which is enforced by the Consumer Credit Commissioner, 2601 N. Lamar Blvd., Austin, TX 78705-4207; Phone (800) 538-1579 or (512) 936-7600. Contact the Commissioner relative to any inquiries or complaints. (VTCA 2:14001)

SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE INCLUDING THOSE ON PAGES 1, 2, 3, AND 4.

THIS NOTE CONSTITUTES A "WRITTEN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

DO NOT SIGN IF THERE ARE ANY BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW, OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.

I MAY, WITHIN 3 BUSINESS DAYS AFTER CLOSING, RESCIND THIS LOAN WITHOUT PENALTY OR CHARGE.

SELLER'S SIGNATURE:

| Signature | Date | Signature  Gerardo Lozano | 8/23/00 Date |
| Signature | Date | Signature | 8/23/00 Date |
| Signature | Date | Signature | Date |

© 1997 Bankers Systems, Inc., St. Cloud, MN  Form GT-REN1LZ-TX  12/29/99

GT-15-44-011a (12/99) (page 4 of 4)

App #: 0007212045

## ADDENDUM A
### Additional Finance Charges to Note

| | |
|---|---|
| 801 Loan Origination Fee | $300.00 |
| 809 Points/Prepaid Interes | $2,407.50 |
| 1101 Settlement or Closing fee | $150.00 |
| **TOTAL** | $2,857.50 |

Borrower Initials:

112360

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MONICA LOZANO | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | CASE NO. B-02-117 |
| | § | |
| CONSECO FINANCE SERVICING CORP. | § | |
|     Defendant | § | Jury Demanded |

## ORDER DENYING DEFENDANT'S MOTION TO ABATE AND TO COMPEL ARBITRATION

After considering Defendant's Motion to Abate and to Compel Arbitration and Plaintiff's Response to Defendant's Motion to Abate and to Compel Arbitration, the court DENIES Defendant's Motion to Abate and to Compel Arbitration and ORDERS that this matter proceed in the United States District Court, Southern District of Texas, Brownsville Division.

SIGNED on _____, 2002.


_____
JUDGE PRESIDING

Page 10 of 10